(No. 2061— ▌▌▌▌)

FRED L. HANSEN, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 9, 1935.*

FRANK J. BURNS AND JAMES T. BURNS, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

Mr. Justice Yantis delivered the opinion of the court:

This claim was filed January 25, 1933, for an allowance of Ten Thousand Dollars ($10,000.00), for the use of road marking machines, for the basic principle or design of which plaintiff claims to hold patent rights.

The evidence discloses that plaintiff, at the time of the hearing of this case on August 23, 1933, and other dates prior thereto, was an employee of the State Highway Department; that he had been employed by such department in 1921-22-23 and 1924 and more or less continuously for a period of thirteen years; that in 1921 and 1922 the State Highway Department was confronted with the problem of marking a traffic line down the center of the paved highways of the State; that various employees of the State Highway Department were instructed to apply themselves to the task of making a machine or plans for a machine that would serve this purpose. Albert H. Elmore, now a farmer of Mason City, Illinois, was one of the men thus employed. He testified that he built a three-wheeled machine in 1922; that he later made a four-wheeled machine at the request of his superiors, Messrs. Todd and Tarrant. In October, 1922, that machine was improved with a fire box for heating asphalt and a sand box. Elmore testified that seven machines of that type and one of the three-wheeled type were made in the summer and fall of 1922 and were shipped to various parts of the State for use under the direction of the State Highway Department. Various changes were made in the details of construction, including a patented nozzle or asphalt spreader, shown to have been manufactured by the Weaver Manufacturing Company of Springfield, Illinois.

Other machines for the same purpose were built by Harry Whipperman and Virgil Patch. These machines were used, according to the evidence (Record P. 85), for about ten years. One of these machines known as the "Dixon Hand Machine," was sent to the Elgin district, where plaintiff was then employed.

Plaintiff herein, as one of the employees of the Highway Department, was asked by C. R. French, one of his superior officers, if he could build such a machine. Thereafter it appears that plaintiff, while employed by the State and working in the State garage, and with State tools and supplies, and during a part at least of his regular working hours, devoted his mind and energy toward designing and building a machine for the purpose stated. During a part of this time he was foreman of one of the State garages and foreman of mechanics and devoted a part of his leisure hours to further developing a road marking machine. The patents held by plaintiff include a design for a rotary brush, adjustably secured for the purpose of cleaning the road as the marking thereof progressed; one patent being for a circular brush and the other for a cylinder or barrel type brush.

J. L. Todd testified that a rotary broom was designed and manufactured in the Springfield garage and used on the machines built there by the State in June, 1923. These machines also had the Weaver adjustable nozzle, controlling the flow of asphalt.

C. W. Ross testified that the first machine built in the Dixon office was in August, 1922; that it used asphalt and had a sand box and was pushed by hand; that this machine was loaned to the Elgin district (where Hansen was employed); that the plans for this machine came from the Springfield office of the Highway Department. C. I. Burggraf and J. G. Hagenbacher of the East St. Louis State Highway office received the machine from the Springfield garage in 1922; used it two years and thereafter built two additional ones at the East St. Louis garage.

A large amount of evidence appears in the record concerning plaintiff's priority rights to a patent for road marking machinery, and to show that an effort was made by Fred Tarrant and L. H. Hendrick of the State Highway Department to also obtain patents on machines designed for such purpose. A great deal of testimony, to which objections were properly

made, appears; but this opinion will not be encumbered by specific rulings upon these many objections.

Plaintiff's claim is, in effect, a demand for damages for the infringement of a patent; the specific claim being "That the State of Illinois through its officers, agents and employees had been using plaintiff's inventions without authority of plaintiff and without having paid to him any compensation for the use of said inventions," by reason of which plaintiff claims damages in the sum of $10,000.00. His Bill of Particulars limits his complaint to the use of such machinery from and after September 1, 1926.

The negotiations between plaintiff, Tarrant and Hendrick relative to the proposed building of road marking machinery by the Austin Manufacturing Company under plaintiff's patents evidences the amount that plaintiff was willing to receive as royalty for each traffic line-laying machine that was manufactured from his patents by said company. Under the terms of an agreement which plaintiff signed on January 24, 1924, and submitted to Messrs. Tarrant and Hendrick, plaintiff offered to accept Twenty-five Dollars ($25.00) for each machine so manufactured; Messrs. Tarrant and Hendrick were to have the machines manufactured by the Austin Manufacturing Company and were to pay plaintiff his royalty each six months, and were also to reimburse plaintiff for "Three-fourths of the sum not more than $200.00 for the securing of patents on said traffic line-laying machine." The title to his patents were to remain in the name and possession of plaintiff, but the other parties were to have exclusive right to the use of same in the manufacture and sale of machines. (Claimant's Exhibit 17.)

Plaintiff testified that he had no objection to the State using the machine patented by him, when it was first built, but that in January, 1926, he protested to C. R. Miller, Director of Public Works, against the construction or use of any second or subsequent machines without compensation to him. Plaintiff also testified that he knew in the fall of 1923 that other similar machines were being used in all parts of Illinois.

The conclusion that must be drawn from a careful study of the entire record, is that in 1921 and 1922 the officers and employees of the State Highway Department became convinced that some system for marking a traffic line on the paved highways was necessary; that the foremen and mechan-

ics at different State highway shops were given instructions to attempt to design and build machines for such purpose; that plaintiff was merely one of several employees to whom such request was made and who responded thereto. The record shows that other machines having the basic principles of the one later patented by plaintiff were in use before he built his first machine. The fact that he was the first one to apply for a patent does not in itself give him any standing in this court in attempting to obtain from the State special compensation for the use of machines which the State has built and paid for, and which according to the evidence, are based upon many of the same basic principles appearing in the machines built by other employees of the State before, or independent of, any machine that was designed or built by plaintiff. As above stated, the negotiations between Messrs. Tarrant and Hendrick, and plaintiff, and the contentions between them as to priority rights to a patent for road line-laying machinery, indicate plaintiff's opinion in 1924 as to the amount which he should be paid for the use of each machine manufactured from his plans, i. e., Twenty-five Dollars ($25.00) per machine. There is no evidence as to how many road marking machines have been manufactured by the State since the objection date fixed by plaintiff in his Bill of Complaint, i. e., September 1, 1926, but he testified that throughout the years he has seen several, "As many as twelve or fifteen," in operation. At Twenty-five Dollars ($25.00) each, claimant's royalties would have amounted to Three Hundred Seventy-five Dollars ($375.00). However, plaintiff does not appear to be entitled to an award in any amount.

This claim does not in any way involve the question of the title to the patents and it is immaterial whether claimant, Tarrant, Hendrick or some other employee of the State originated the idea of the line-laying machine. The only question is whether there is existing authority under which the State should pay claimant for the use of the machines built by itself or at its cost from designs developed by the various State employees, including plaintiff, while such employees were working for and paid by the State, with a part of their specific duties at the time, being to develop and help construct a machine for the purpose stated.

"One who has conceived the general principle or plan of an invention is not to be deprived of the right to be regarded as the inventor of the

method or device embodying his conception by the fact that other persons employed by him for the purpose reduced or assisted in reducing his conception to practice; * * *. If co-employees bear to each other the relation of principal and assistant the rule applicable to employer and employee applies. * * * If the generic invention was communicated to the employee the employer is not deprived of the right to obtain a patent for the specific method or device produced by the employee by the fact that a slightly different embodiment was disclosed to the employee.

"Where the relation of employer and employee is established a presumption arises that the employer is the inventor of the thing produced by their joint effort."

## 48 *C. J.* 121 (Sec. 136).

"A suit for an infringement or by way of injunction may be barred by laches as where there has been long delay in bringing suit without a valid and sufficient excuse therefor or unreasonable delay or delay accompanied by circumstances amounting to an estoppel."

## 48 *C. J.* 331 (Secs. 532-533).

"The general rule is that where a mechanic in laboring for an employer in the construction of a machine invents a valuable improvement the invention is the property of the inventor and not that of the employer. The circumstances set up may render the machine actually made the property of the employer and in equity may really amount to a license to the employer to use the machine made, and possibly to a license to make and use other machines. But that would not give the employer the title to the patent."

### *Joliet Mfg. Co.* vs. *Dice*, 105 Ill. 649.

Plaintiff in his reply brief takes no issue with the above propositions of law but contends that he conceived the idea of such a machine as the one in question before he was ever instructed by the Highway office to devote any time and effort to the designing or building thereof. Regardless of this, the fact remains that plaintiff was employed by the State and was paid Two Hundred Dollars ($200.00) per month for his services and that he was specifically directed as a part of his labor to help work out a device for marking highways; that thereafter, using the employer's shop, tools, material and time, with some additional work in his leisure hours, plaintiff designed and built a machine which he later patented and royalty for which is now demanded from such employer. Under the circumstances, under the law and as a matter of equity, the State has a right and license to use the machine made and to make and use other similar machines. The evidence shows that the State has never manufactured any line-laying ma-

chine for commercial use or sales purposes and there is considerable doubt from the record whether the machine it is now using for marking the highways has been built from ideas and plans developed independently of plaintiff's work or whether such machines follow the designs produced by him. According to plaintiff's testimony the State is not now using any machine having a rotary broom or cylinder rotary broom attachment; the testimony further showing that the machines now in use incorporate and use the same basic and fundamental principles set forth in the early machines built in the Springfield district and the same basic and fundamental principles that appear in plaintiff's patents. If the State is using a machine that it is building or having built from ideas developed by plaintiff as heretofore set forth, the State of Illinois, as his employer, will be entitled as licensee to so do.

An award is therefore denied and the claim is hereby dismissed.